IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| In re:<br><br>**MEGAN M. STATEN,**<br><br>      Debtor. | Case No. 3:21-CV-794-NJR<br>Ch. 7 Bankruptcy Case No. 20-30604 |
| **NANCY GARGULA, UNITED STATES** Trustee,<br><br>      Plaintiff,<br><br>v.<br><br>**DEIGHAN LAW LLC, f/k/a Law Solutions Chicago LLC, d/b/a Upright Law LLC, and RONALD ALLAN BUCH,**<br><br>      Defendants. | Adversary No. 21-03009 |

# MEMORANDUM AND ORDER

**ROSENSTENGEL, Chief Judge:**

Pending before the Court is a Motion to Withdraw Reference from the United States Bankruptcy Court for the Southern District of Illinois filed by Defendants Deighan Law LLC., d/b/a Upright Law LLC ("Upright"), and Ronald Allan Buch pursuant to 28 U.S.C. § 157(d). (Doc. 2). United States Trustee Nancy J. Gargula ("the Trustee") filed a response in opposition to the request to withdraw reference, and Defendants filed a reply. (Docs. 2-1, 3). For the reasons set forth below, the motion is denied.

BACKGROUND

On September 25, 2018, debtor Megan Staten allegedly contacted Upright about filing for bankruptcy. She ultimately did file for bankruptcy, "and . . . agree[d] to pay

UpRight Law the quoted sum of $1,675.00 in attorney's fees plus the court filing fee of $335.00 to accomplish her filing." *See* Compl., *In re Staten*, 21-03009 (Bankr. S.D. IL. June 10, 2021). Almost six months later—after Staten had paid all the fees Upright charged—the case was handed off to Buch. But Buch did not file a Chapter 7 bankruptcy petition for Staten when he was handed the case in March 2019. Rather, over a year later, on June 15, 2020, Buch filed Staten's bankruptcy petition, thus allowing creditors to continue to garnish hundreds of dollars from Staten's wages in 2018, 2019, and 2020.

According to the Trustee, Upright is a legal referral service that sends potential bankruptcy filers to local attorneys, like Buch. The Trustee alleges that "[d]uring the months from September 25, 2018 until March 13, 2019, UpRight Law did not provide Debtor with a check list of documents to gather, did not begin to prepare or review the petition, schedules and required documents, did not request that the Debtor gather and save copies of paystubs, bank statements, bills/notices from creditors and tax returns, and, contrary to their promises they would provide immediate legal help, failed to act with appropriate diligence to ensure Debtor's case was filed in a timely manner." As a result, on June 10, 2021, the Trustee filed a complaint against Defendants based on Upright's method of doing business. The Trustee alleges Defendants have violated bankruptcy law in three ways—pointing to three provisions of the Bankruptcy Code and one Bankruptcy Rule:

> (1) 11 U.S.C. § 526(a)(1), which prohibits debt relief agencies from "fail[ing] to perform any service that such agency informed an assisted person or prospective assisted person it would provide in connection with a case or proceeding under this title";

(2) 11 U.S.C. § 526(a)(3), which prohibits debt relief agencies from "misrepresent[ing] to any assisted person or prospective assisted person, directly or indirectly, affirmatively or by material omission, with respect to—(A) the services that such agency will provide to such person; or (B) the benefits and risks that may result if such person becomes a debtor in a case under this title";

(3) 11 U.S.C. § 329(b), which allows the court to cancel an agreement for a debtor to pay an attorney an amount exceeding the reasonable value of the services performed or order the return of the excess payment to the estate or the person who made the payment; and

(4) Federal Rule of Bankruptcy Procedure 2017, which permits a court, after notice and a hearing, to determine whether a debtor's payment to an attorney in contemplation of the filing of a Bankruptcy petition was excessive.

See Compl., *In re Staten*, 21-03009 (Bankr. S.D. IL. June 10, 2021). The Trustee seeks an injunction, a civil penalty, and disgorgement of amounts Staten paid defendants.

This matter was referred to the Bankruptcy Court pursuant to 28 U.S.C. § 157(1) and Local Rule Br1001.1. However, Defendants ask the Court to withdraw that reference pursuant to 28 U.S.C. § 157(d). Defendants argue that withdrawal is mandatory because:

(1) Defendants are entitled to a jury trial under the Seventh Amendment on Trustee's claims against them for civil penalties for a clear and consistent pattern or practice of violating 11 U.S.C. § 526;

(2) this proceeding requires consideration of Defendants' due process rights under the Fifth Amendment;

(3) their First Amendment rights are infringed by the Trustee's request under 11 U.S.C. § 526(c)(5) to enjoin Upright from violating § 526(a); and

(4) this is a non-core proceeding and there is a need for uniformity and efficient resolution of the dozens of Bankruptcy cases in which the Trustee has sought relief against Upright and its network of local attorneys for similar reasons.

(Doc. 2, pp. 4-5).

## LEGAL STANDARD

District courts have original jurisdiction over all bankruptcy proceedings arising out of Title 11 of the United States Code, *see* 28 U.S.C. § 1334, but a district court may "provide that any or all cases under title 11 [of the United States Code] and any or all proceeding arising under title 11 or arising in or related to a case under title 11 shall be referred to the bankruptcy judges for the district." 28 U.S.C. § 157(a). This district's Local Rule Br1001.1 automatically refers all cases rising under Title 11 to the bankruptcy judge in this district.

A district judge "may withdraw, in whole or in part, any case or proceeding referred under this section, on its own motion or on timely motion of any party, for cause shown" for the removal. 28 U.S.C. § 157(d). Section 157(d) does not define "cause," but courts generally consider the following factors in determining whether cause exists: whether withdrawal would promote judicial economy or uniformity and efficiency in bankruptcy administration; whether it would reduce forum shopping; whether it would cause delay and costs to the parties; whether a particular court has familiarity with the case; whether the parties have demanded a jury trial; and whether a core or non-core proceeding is involved. *See Adelsperger as Tr. For Consol. Bankr. Estate of 5 Star Commercial, LLC v. 3d Holographics Med. Imaging Inc.*, 2019 WL 2206091, at *2 (N.D. Ind. May 21, 2019).

As another district court put it, district courts have "broad discretion to determine whether to withdraw a reference based on cause, but at the same time, permissive withdrawal is the exception, rather than the rule, as bankruptcy jurisdiction is 'designed

to provide a single forum for dealing with all claims to the bankrupt's assets.'" *In re K & R Express Sys., Inc.*, 382 B.R. 443, 446 (N.D. Ill. 2007) (citing *In re Sevko, Inc.*, 143 B.R. 114, 115 (N.D. Ill. 1992), and quoting *Xonics v. First Wis. Fin. Corp.*, 813 F.2d 127, 131 (7th Cir. 1987)). The moving party has the burden of establishing sufficient cause. *In re Stein*, 2017 WL 2418325, at *1 (S.D. Ind. June 2, 2017).

DISCUSSION

**I.   Right to a Jury Trial Under the Seventh Amendment**

The Seventh Amendment guarantees the right to a jury trial for "suits at common law, where the value in controversy shall exceed twenty dollars[.]" U.S. Const. amend. VII. The Supreme Court "[has] consistently interpreted the phrase '[s]uits at common law' to refer to 'suits in which legal rights were to be ascertained and determined, in contradistinction to those where equitable rights alone were recognized, and equitable remedies were administered.'" *Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 41 (1989) (quoting *Parsons v. Bedford*, 28 U.S. 433, 447 (1830)). To determine whether the right to jury trial is present in a particular action, courts consider the following:

> First, we compare the statutory action to 18th-century actions brought in the courts of England prior to the merger of the courts of law and equity. Second, we examine the remedy sought and determine whether it is legal or equitable in nature. The second stage of this analysis is more important than the first. *If, on balance, these two factors indicate that a party is entitled to a jury trial under the Seventh Amendment, we must decide whether Congress may assign and has assigned resolution of the relevant claim to a non-Article III adjudicative body that does not use a jury as factfinder.*

*Id.* at 42 (internal citations and quotations omitted) (emphasis added).

Defendants argue that "[a]pplication of the *Granfinanciera* test confirms that Defendants are entitled to a jury trial on the [Trustee's] § 526 claims." (Doc. 2, p. 12). Defendants first note that "[c]laims brought by the Federal Government that purport to seek civil penalties have long been held to be analogous to actions in debt that fell within jurisdiction of the English courts of law." (*Id.*). As one might predict, Defendants continue arguing that § 526 claims seek a legal remedy—not equitable—because the Trustee seeks civil penalties. (Doc. 2, p. 13).

Even if claims brought by the Government seeking civil penalties have long been tied to English courts of law and the claims seek a legal remedy, the Court must still decide whether § 526 claims involve a matter of "private right" or "public right." *Granfinanciera*, 492 U.S. at 42. Generally, claims involve a matter of private rights when one individual is liable "to another under the law as defined." *Crowell v. Benson*, 285 U.S. 22, 51 (1932). Public rights are "statutory rights that are integral parts of a public regulatory scheme and whose adjudication Congress has assigned to an administrative agency or specialized court of equity." *Granfinanciera*, 492 U.S. at 55.

The Supreme Court "has not 'definitively explained' the distinction between public and private rights, *Northern Pipeline Constr. Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 69, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982), and its precedents applying the public-rights doctrine have 'not been entirely consistent.'" *Oil States Energy Servs., LLC v. Greene's Energy Grp., LLC*, 138 S. Ct. 1365, 1373 (2018) (quoting *Stern v. Marshall*, 564 U.S. 462, 488 (2011)). Luckily, the Supreme Court has faced Article III challenges to a bankruptcy

court's resolution of a debtor's suit multiple times. *Stern*, 564 U.S. at 485. The Court in *Stern* summarized *Northern Pipeline*, 458 U.S. 50, by noting the following:

> In *Northern Pipeline*, we considered whether bankruptcy judges serving under the Bankruptcy Act of 1978—appointed by the President and confirmed by the Senate, but lacking the tenure and salary guarantees of Article III—could "constitutionally be vested with jurisdiction to decide [a] state-law contract claim" against an entity that was not otherwise part of the bankruptcy proceedings. *Id.*, at 53, 87, n. 40, 102 S.Ct. 2858 (plurality opinion); *see id.*, at 89–92, 102 S.Ct. 2858 (Rehnquist, J., concurring in judgment). The Court concluded that assignment of such state law claims for resolution by those judges "violates Art. III of the Constitution." *Id.*, at 52, 87, 102 S.Ct. 2858 (plurality opinion); *id.*, at 91, 102 S.Ct. 2858 (Rehnquist, J., concurring in judgment).
>
> The plurality in *Northern Pipeline* recognized that there was a category of cases involving "public rights" that Congress could constitutionally assign to "legislative" courts for resolution. *That opinion concluded that this "public rights" exception extended "only to matters arising between" individuals and the Government "in connection with the performance of the constitutional functions of the executive or legislative departments ... that historically could have been determined exclusively by those" branches*. *Id.*, at 67–68, 102 S.Ct. 2858 (internal quotation marks omitted). A full majority of the Court, while not agreeing on the scope of the exception, concluded that the doctrine did not encompass adjudication of the state law claim at issue in that case. *Id.*, at 69–72, 102 S.Ct. 2858; see id., at 90–91, 102 S.Ct. 2858 (Rehnquist, J., concurring in judgment) ("None of the [previous cases addressing Article III power] has gone so far as to sanction the type of adjudication to which Marathon will be subjected .... To whatever extent different powers granted under [the 1978] Act might be sustained under the 'public rights' doctrine of *Murray's Lessee* ... and succeeding cases, I am satisfied that the adjudication of Northern's lawsuit cannot be so sustained").

*Id.* at 485–86 (emphasis added).

The Court acknowledged that the consideration "of the application of the public rights exception—and the [next] case in which [the] [Court] [ ] considered that doctrine in the bankruptcy context . . . is *Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 109 S.Ct. 2782, 106 L.Ed.2d 26 (1989)." *Id.* at 492. The Court in *Stern* then summarized *Granfinanciera*:

> In *Granfinanciera* we rejected a bankruptcy trustee's argument that a fraudulent conveyance action filed on behalf of a bankruptcy estate against a noncreditor in a bankruptcy proceeding fell within the "public rights" exception. We explained that, "*[i]f a statutory right is not closely intertwined with a federal regulatory program Congress has power to enact, and if that right neither belongs to nor exists against the Federal Government, then it must be adjudicated by an Article III court.*" *Id.*, at 54–55, 109 S.Ct. 2782. We reasoned that fraudulent conveyance suits were "quintessentially suits at common law that more nearly resemble state law contract claims brought by a bankrupt corporation to augment the bankruptcy estate than they do creditors' hierarchically ordered claims to a pro rata share of the bankruptcy res." *Id.*, at 56, 109 S.Ct. 2782. As a consequence, we concluded that fraudulent conveyance actions were "more accurately characterized as a private rather than a public right as we have used those terms in our Article III decisions." *Id.*, at 55, 109 S.Ct. 2782.

*Id.* at 492 (emphasis added). After analyzing both *Northern Pipeline* and *Granfinanciera*, the Court in *Stern*—another case in which the Supreme Court considered the public rights doctrine in the bankruptcy context—concluded the following:

> [Petitioner's] counterclaim—like the fraudulent conveyance claim at issue in *Granfinanciera*—does not fall within any of the *varied formulations of the public rights exception in this Court's cases*. It is not a matter that can be pursued only by grace of the other branches, as in *Murray's Lessee*, 18 How., at 284, or one that "historically could have been determined exclusively by" those branches, *Northern Pipeline*, supra, at 68, 102 S.Ct. 2858 (*citing Ex parte Bakelite Corp., supra*, at 458, 49 S.Ct. 411). The claim is instead one under state common law between two private parties. It does not "depend [ ] upon the will of congress," *Murray's Lessee, supra*, at 284; Congress has nothing to do with it.

> In addition, [petitioner's] claimed right to relief does not flow from a federal statutory scheme, as in *Thomas, supra*, at 584 – 585, 105 S.Ct. 3325, or *Atlas Roofing*, 430 U.S., at 458, 97 S.Ct. 1261. It is not "completely dependent upon" adjudication of a claim created by federal law, as in *Schor*, 478 U.S., at 856, 106 S.Ct. 3245. And in contrast to the objecting party in *Schor, id.*, at 855–856, 106 S.Ct. 3245, [respondent] did not truly consent to resolution of [petitioner's] claim in the bankruptcy court proceedings.

> . . .

> Furthermore, the asserted authority to decide [petitioner's] claim is not limited to a "particularized area of the law," as in *Crowell*, *Thomas*, and *Schor*. *Northern Pipeline*, 458 U.S., at 85, 102 S.Ct. 2858 (plurality opinion). We deal here not with an agency but with a court, with substantive jurisdiction reaching any area of the corpus juris. *See ibid.*; *id.*, at 91, 102 S.Ct. 2858 (Rehnquist, J., concurring in judgment). This is not a situation in which Congress devised an "expert and inexpensive method for dealing with a class of questions of fact which are particularly suited to examination and determination by an administrative agency specially assigned to that task." *Crowell*, 285 U.S., at 46, 52 S.Ct. 285; *see Schor*, *supra*, at 855–856, 106 S.Ct. 3245. The "experts" in the federal system at resolving common law counterclaims such as [petitioner's] are the Article III courts, and it is with those courts that her claim must stay.

*Id.* at 493–94 (emphasis added).

Unlike the claims in *Northern Pipeline*, *Granfinanciera*, and *Stern*, claims under 11 U.S.C. § 526 flow from a federal statutory scheme established by Congress to protect consumer debtors from certain conduct by debt relief agencies. *See, e.g., Milavetz, Gallop & Milavetz, P.A. v. United States*, 559 U.S. 229, 231–32 (2010) (acknowledging that "Congress enacted the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 (BAPCPA or Act) to correct perceived abuses of the bankruptcy system. Among the reform measures the Act implemented are a number of provisions that regulate the conduct of 'debt relief agenc[ies]'—i.e., professionals who provide bankruptcy assistance to consumer debtors"). Accordingly, § 526 claims fall within at least one "of the varied formulations of the public rights exception in [ ] [the] [Supreme] Court's cases[,]" *Stern*, 564 U.S. at 493, and Defendants are not entitled to a jury trial on the Trustee's § 526 claims.[1]

---

[1] The Court further finds the permissive nature of this assignment immaterial to the question of whether Defendants are entitled to a jury trial. The permissive nature of the assignments in

## II.  Mandatory Withdrawal

Next, Defendants argue that withdrawal of the reference is mandatory because resolution of this proceeding requires consideration of Defendants' due process rights under the Fifth Amendment and Defendants' right to commercial speech under the First Amendment. But withdrawing the reference because the resolution *potentially* requires consideration of rights under the First and Fifth Amendments would ignore Seventh Circuit jurisprudence.

Indeed, the Seventh Circuit has explained that "[g]iven the discretion granted to district courts by § 157(d), there is little reason to assume that withdrawal is required by the mere presence of a non-title 11 issue, even if that issue is outcome determinative." *In re Vicars Ins. Agency, Inc.*, 96 F.3d 949, 953 (7th Cir. 1996). "[A]s far as non-title 11 issues are presented, mandatory withdrawal is required only when those issues require the interpretation, as opposed to mere application, of the non-title 11 statute, or when the court must undertake analysis of significant open and unresolved issues regarding the non-title 11 law. *Id.* at 954. "The legal questions involved need not be of 'cosmic proportions,' *In re Rimsat, Ltd.*, 196 B.R. 791, 799 (N.D. Ind. 1995), but must involve more than mere application of existing law to new facts." *Id.*

As shown below, consideration of Defendants' due process rights under the Fifth Amendment and Defendants' right to commercial speech under the First Amendment

---

*Northern Pipeline*, *Granfinanciera*, and *Stern* were not material. Instead, the Supreme Court concentrated on the varied formulations of the public rights exception.

require merely application—and do not require the Bankruptcy Court to undertake analysis of significant open and unresolved issues regarding these rights.[2]

### A. Right to Due Process Under the Fifth Amendment

The Fifth Amendment provides that "[n]o person shall ... be deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V. "The general test for determining what process is due and when was set out in *Mathews v. Eldridge*, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976)." *Simpson v. Brown Cnty.*, 860 F.3d 1001, 1006 (7th Cir. 2017). "*Mathews* identified three factors to be balanced: first, the private interest at stake; second, the risk of erroneous deprivation and the value, if any, of additional procedural safeguards; and third, the government's countervailing interests." *Id*. (citing *Mathews*, 424 U.S. at 335). "The basic rights guaranteed by constitutional due process are notice of the intended adverse government action and an opportunity to be heard in response, although more elaborate procedural rights—such as the rights to present evidence, to confront adverse witnesses, and to be represented by counsel—may apply in cases in which vital private interests are at risk." *Id*.

---

[2] Defendants also passingly note that the reference must be withdrawn where resolution of a proceeding requires consideration of Title 11 and interstate commerce. Rather than going into further detail, the Court agrees with the analysis of Senior District Judge J. Phil Gilbert in *In re Collier*, 2022 WL 874730, at *5 (S.D. Ill. Mar. 24, 2022). As noted by Judge Gilbert, "[u]nder § 157(d), mandatory withdrawal requires, at minimum, the presence of a non-Bankruptcy Code federal law that has 'more than a *de minimis* effect on interstate commerce.'" *Id*. (quoting *Mikulin v. L. Sols. Chicago, LLC*, 2020 WL 514474, at *2 (N.D. Ala. Jan. 31, 2020)). Like in *In re Collier*, "Defendants do not make an adequate showing that a resolution of this matter has more than a *de minimis* effect on interstate commerce." *Id*. Accordingly, the Court rejects this argument.

Defendants argue the Bankruptcy Court cannot serve as a neutral arbiter for six reasons, and thus due process requires withdrawal of the reference.[3] Defendants quote *Montgomery v. Uchtman*, 426 F.3d 905 (7th Cir. 2005), for the notion that "[t]he Due Process Clause guarantees litigants an impartial judge." *Id*. at 910; (Doc. 2, p. 19). Significantly, the Court in *Montgomery* provided examples where a party rebutted the general presumption that judges are honest and impartial. *See e.g., Tumey v. State of Ohio*, 273 U.S. 510 (1927); *Ward v. Vill. of Monroeville, Ohio*, 409 U.S. 57 (1972); *Aetna Life Ins. Co. v. Lavoie*, 475 U.S. 813 (1986). "In *Tumey* and *Ward*, it was certain that only convictions would generate revenue; thus, the judges' bias was clear." *Montgomery*, 426 F.3d at 911. "Similarly, in *Aetna Life Ins.* it was certain that the Alabama Supreme Court justice's decision and unprecedented award of damages made success in his own contemporaneous lawsuit far more likely." *Id*. Not only do Defendants fail to compare the Bankruptcy Court's actions to the examples in *Tumey*, *Ward*, and *Aetna Life Ins.*, but also Defendants' six reasons fail to rebut the general assumption that the Bankruptcy Court is honest and impartial.

Defendants also quote a Ninth Circuit case for the notion that "[a] neutral judge is one of the most basic due process protections." *Zolotukhin v. Gonzales*, 417 F.3d 1073, 1075 (9th Cir. 2005). In *Zolotukhin*, the Ninth Circuit found that an immigration judge prejudiced the petitioner's case by *prejudging the merits of the case* and denying the petitioner "a full and fair opportunity to present evidence on his behalf, including . . .

---

[3] None of Defendants' six reasons address the basic factors in *Mathews*.

exclude[ing] the testimony of several key witnesses." *Id*. The closest Defendants get to comparing their situation with *Zolotukhin* is the assertion that "[t]he Bankruptcy Court already has prejudged the merits." (Doc. 2, p. 21). Defendants contend "[t]he Bankruptcy Court has purported to make 'Findings of Facts' relating to Defendants' representation of debtors in numerous cases in the absence of any contested matter or evidentiary hearing." (*Id.*). The problem is these "Findings of Fact" were *not* findings on the merits of the allegations raised by the Trustee. Rather, these "Findings of Fact" were made in response to the Motions to Close Case filed by Defendants. (Doc. 2, pp. 369-415). The Court fails to see how making "Findings of Facts" in an order over Defendants' Motion to Close Case amounts to prejudging the merits—especially when comparing the situation to the prejudging that happened in *Zolotukhin*.

Besides the above, Defendants fail to show their due process rights under the Fifth Amendment requires the Bankruptcy Court to undertake an analysis of significant open and unresolved issues.[4] *See In re Vicars*, 96 F.3d at 953 ("[T]he moving party [must] [ ] demonstrate that the grounds for withdrawal are satisfied (i.e., substantial and material consideration is required"). Accordingly, the Court does not find that withdrawal of the reference is mandatory.

### B. Right to Commercial Speech Under the First Amendment

Besides the Fifth and Seventh Amendments, Defendants argue the reference must be withdrawn because their First Amendment rights are infringed by the Trustee's

---

[4] "Indeed bankruptcy courts are quite adept at analyzing due process challenges in bankruptcy cases." *Cordova v. City of Chicago*, 618 B.R. 244, 248–49 (N.D. Ill. 2020) (collecting cases).

request under 11 U.S.C. § 526(c)(5) to enjoin Upright from "engaging in conduct which would violate Section 526(a), including representing to Debtor that it is 'efficient' or able to timely file a case or that it will provide immediate legal help." *See* Compl., *In re Staten*, 21-03009 (Bankr. S.D. IL. June 10, 2021).

The First Amendment grants citizens the freedom of speech, stating that: "Congress shall make no law… abridging the freedom of speech." U.S. Const. amend. I. However, "certain categories of speech receive a lesser degree of constitutional protection." *Jordan v. Jewel Food Stores, Inc.*, 743 F.3d 509, 515 (7th Cir. 2014). "[C]ommercial speech is constitutionally protected but governmental burdens on this category of speech are scrutinized more leniently than burdens on fully protected noncommercial speech." *Id.* (citing *Bd. of Trustees of State Univ. of New York v. Fox*, 492 U.S. 469, 477 (1989); *Zauderer v. Off. of Disciplinary Couns. of Supreme Ct. of Ohio*, 471 U.S. 626, 637 (1985)). The Supreme Court has acknowledged a difference between *restrictions* on commercial speech and *disclosure requirements*, such that "the First Amendment interests implicated by *disclosure requirements* are substantially weaker than those at stake when speech is actually *suppressed* . . . ." *Zauderer*, 471 U.S. at 651 (emphasis added); *see also Connecticut Bar Ass'n v. United States*, 620 F.3d 81, 93 (2d Cir. 2010) (acknowledging that "because the regulations compel disclosure without suppressing speech, *Zauderer*, not *Central Hudson*, provides the standard of review"); *Dwyer v. Cappell*, 762 F.3d 275, 282 (3d Cir. 2014) (noting that "the takeaway[ ] [is] there exist different frameworks for analyzing restrictions on speech and disclosure requirements").

Similar to Defendants' due process rights under the Fifth Amendment, Defendants fail to demonstrate that their right to commercial speech under the First Amendment requires the Bankruptcy Court to undertake an analysis of significant open and unresolved issues. Commercial speech may demand higher or lower scrutiny depending on the "nature both of the expression and of the government interests served by its regulation." *Cent. Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of New York*, 447 U.S. 557, 563 (1980). However, the default test is the four-part intermediate-scrutiny approach in *Central Hudson*. Defendants do not argue that this case is any different.

Moreover, courts have not found that First Amendment rights automatically require an analysis of significant open and unresolved issues. *See Szanto v. Santo*, 2019 WL 1932366, at *7 (D. Or. May 1, 2019) (acknowledging that while party made "general references" to the First Amendment—the party failed to "explain how these laws or constitutional provisions require the Bankruptcy Court to interpret an uncertain legal principle as opposed to applying a fixed legal standard to a given set of facts"); *Greenspan v. Paul Hastings Janofsky & Walker LLP*, 2012 WL 3283516, at *6 (N.D. Cal. Aug. 10, 2012) (noting that the right to association "involves at most the routine application of the federal law . . . [and] [d]efendant does not point to a novel application of these constitutional principles at issue here"); *In re Ionosphere Clubs, Inc.*, 103 B.R. 416, 420 (S.D.N.Y. 1989) (finding "that the[ ] purported First Amendment issues do not constitute substantial and material considerations for the resolution of the adversary proceeding"). Accordingly, the Court does not find that withdrawal of the reference is mandatory based on Defendants' commercial speech argument.

### III. Permissive Withdrawal

District courts "*may* withdraw, in whole or in part, any case or proceeding . . . on its own motion or on timely motion of any party, *for cause shown*." 28 U.S.C. § 157(d) (emphasis added). Section 157(d) does not define "cause," but courts generally consider the following factors in determining whether cause exists:

- whether withdrawal would promote judicial economy or uniformity and efficiency in bankruptcy administration;
- whether it would reduce forum shopping;
- whether it would cause delay and costs to the parties;
- whether a particular court has familiarity with the case;
- whether the parties have demanded a jury trial; and
- whether a core or non-core proceeding is involved.

*Homa v. Gargula*, 2019 WL 6701684, at *1 (S.D. Ill. Dec. 9, 2019) (citing *Adelsperger as Tr. For Consol. Bankr. Estate of 5 Star Commercial, LLC v. 3d Holographics Med. Imaging Inc.*, 2019 WL 2206091, at *2 (N.D. Ind. May 21, 2019)).

Defendants argue withdrawal of the reference is appropriate because the Trustee's adversary proceeding is non-core, and "the Bankruptcy Court cannot enter a final judgment, and any recommendation . . . would need to be reviewed *de novo* by this Court." (Doc. 2, p. 5).

Defendants are incorrect. This is a core proceeding. The fact that claims under § 526 are not listed in 28 U.S.C. § 157 is of little importance. To be sure, 11 U.S.C. § 157(b)(2) begins with the phrase "[c]ore proceedings include, but are not limited

to . . . ." *See also Matrix IV, Inc. v. Am. Nat. Bank & Tr. Co. of Chicago*, 649 F.3d 539, 550 (7th Cir. 2011) (acknowledging that "[s]ection 157(b)(2) provides a nonexhaustive list of 'core' proceedings").

When a claim is not listed in 11 U.S.C. § 157(b)(2), the Seventh Circuit uses the following definition for determining whether a matter is a core proceeding:

> A proceeding is core under section 157 if it invokes a substantive right provided by title 11 or if it is a proceeding that, by its nature, could arise only in the context of a bankruptcy case.

*Barnett v. Stern*, 909 F.2d 973, 981 (7th Cir. 1990) (quoting *In re Wood*, 825 F.2d 90, 97 (5th Cir. 1987)). Under *Barnett*'s definition, the Trustee's claims against Defendants are core proceedings. First, these claims invoke substantial rights created by federal bankruptcy law—not rights created outside federal bankruptcy law. Second, these claims do not exist outside of the bankruptcy context.[5]

Courts agree that "[a]ctions under 11 U.S.C. § 526 are 'core' proceedings." *Mikulin v. L. Sols. Chicago, LLC*, 2020 WL 514474, at *3 (N.D. Ala. Jan. 31, 2020); *see e.g.*, *In re Anderson*, 562 B.R. 135, 139 (Bankr. S.D. Tex. 2016) ("[w]hile claims under 11 U.S.C.

---

[5] Again, 11 U.S.C. § 526(a)(1) prohibits debt relief agencies from "fail[ing] to perform any service that such agency informed an assisted person or prospective assisted person it would provide in connection with a case or proceeding under this title." 11 U.S.C. § 526(a)(3) prohibits debt relief agencies from "misrepresent[ing] to any assisted person or prospective assisted person, directly or indirectly, affirmatively or by material omission, with respect to—(A) the services that such agency will provide to such person; or (B) the benefits and risks that may result if such person becomes a debtor in a case under this title." 11 U.S.C. § 329(b) allows the court to cancel an agreement for a debtor to pay an attorney an amount exceeding the reasonable value of the services performed or order the return of the excess payment to the estate or the person who made the payment. Finally, Federal Rule of Bankruptcy Procedure 2017 permits a court, after notice and a hearing, to determine whether a debtor's payment to an attorney in contemplation of the filing of a Bankruptcy petition was excessive.

§§ 526–528 are not enumerated core proceedings under 28 U.S.C. § 157, they invoke substantive rights established by the Bankruptcy Code"); *In re Bascus*, 548 B.R. 742, 745 (Bankr. S.D. Tex. 2016) ("[w]hile claims under 11 U.S.C. §§ 110 and 526–528 are not enumerated core proceedings under 28 U.S.C. § 157, they invoke substantive rights established by the Bankruptcy Code"); *In re Dobbs*, 535 B.R. 675, 679 (Bankr. N.D. Miss. 2015) (analyzing violations of § 526 and acknowledging that "[t]his is a core proceeding arising under Title 11 of the United States Code (the 'Bankruptcy Code') as defined in 28 U.S.C. § 157(b)(2)(A)"); *In re Harrelson*, 537 B.R. 16, 27 (Bankr. M.D. Ala. 2015) ("[a] claim asserting violations of debt relief agency restrictions is not specifically listed as a 'core' proceeding under 28 U.S.C. § 157(b)(2). Nevertheless, it is a core proceeding because the right to disgorge fees of entities purporting to provide bankruptcy assistance is established by the Bankruptcy Code and is unique to bankruptcy"); *In re Kohlenberg*, 2012 WL 3292854, at *3 (Bankr. N.D. Ohio Aug. 10, 2012) ("[p]laintiff's claim brought under § 526, which sets forth certain restrictions on debt relief agencies and remedies for the failure to comply with its provisions, is a core proceeding as it involves substantive rights created by federal bankruptcy law").

Courts also agree that actions under 11 U.S.C. § 329 are core proceedings. *See In re Gelb*, 2022 WL 982199, at *1 (Bankr. N.D. Ill. Mar. 31, 2022) (acknowledging that "[t]his proceeding is brought under sections 526, 527, 528 and 329 of the Bankruptcy Code and involves matters concerning the administration of the estate and invokes substantive rights that are either provided by the Code or could only arise in the context of a bankruptcy case. Accordingly, this is a core proceeding under 28 U.S.C. §§ 157(b)(1) and

(b)(2)(A)"); *In re Att'y & Debt Relief Agency*, 2013 WL 6036844, at *1 (Bankr. M.D. Fla. Nov. 13, 2013) (finding that the court had jurisdiction to adjudicate proceedings "pursuant to Fed. R. Bankr.P.2090–1, 2090–2, and 11 U.S.C. §§ 329, 526–28, and 707(b)(4)").

Evaluating the other factors to determine whether cause exists hurts Defendants' argument. Withdrawal would not promote judicial economy or uniformity and efficiency in bankruptcy administration as similar cases between the Trustee and Defendants are in front of the Bankruptcy Court. Further, the motion to withdraw here has already caused delay and costs to the parties—in part because the Court's unfamiliarity with the case and the parties' arguments has caused the Court to dig through hundreds of documents and review many cases—and transferring the case to the District Court may continue to cause delay. On that same note, the Bankruptcy Court is the most familiar with the case as it has administered the underling case since 2020. Accordingly, the Court does not find that withdrawal of the reference is appropriate.

## IV.   Certifying Issues For Interlocutory Appeal

Finally, in the last sentence of the Motion to Withdraw, Defendants ask the Court to "certify the Seventh Amendment right to a jury trial issue and the Fifth Amendment due process issue for interlocutory appeal to the United States Court of Appeals for the Seventh Circuit (the 'Seventh Circuit')." (Doc. 2, p. 2). Then in Defendants' Memorandum in Support of Motion to Withdraw, Defendants do not ask the Court to certify the issue for interlocutory appeal. Not only do Defendants fail to ask the Court to certify the issue for interlocutory appeal in their Memorandum in Support of Motion to Withdraw, but

also Defendants fail to make any argument as to why certification is appropriate. Accordingly, Defendants' request to certify the issues for interlocutory appeal is waived.

## Conclusion

For these reasons set forth above, the Motion to Withdraw the Reference is **DENIED**. (Doc. 2). Defendants' request to certify the issues for interlocutory appeal is **DENIED**. The Court further **DIRECTS** the Clerk of Court to send a copy of this Memorandum and Order to Bankruptcy Judge Laura K. Grandy and **TERMINATE** this case.

**IT IS SO ORDERED.**

**DATED:  July 11, 2022**

*[signature]*

_____
**NANCY J. ROSENSTENGEL**
**Chief U.S. District Judge**